(46 App. Div. 233.)

### ROOSEN v. CARLSON et al.

(Supreme Court, Appellate Division, Second Department. December 19, 1899.)

1. EQUITY—CONTRACT—INJUNCTION—RIGHTS OF THIRD PARTIES.
   Plaintiff agreed with defendant C., who was in the employ of R., to organize a corporation, for which plaintiff was to furnish the capital. C. was to manage the work, and furnish formulas for mixing inks, which formulas he had learned while in the employment of R. Plaintiff sued to compel C. to surrender the formulas, and refrain from working for any one other than plaintiff, making R. also a party. *Held*, it was error to refuse to allow R. to show that he was the owner of the formulas.

2. SAME.
   The agreement to participate in the formation of the corporation, into whose employment both parties were to enter, was not an agreement

whereby defendant C. became a servant of plaintiff, but both parties were to be in the employ of the corporation.

### On Rehearing.

CONTRACT—RESTRAINING BREACH.
> The contract was one which should not be enforced negatively by enjoining its breach.

Appeal from special term, Kings county.

Bill by Herman D. Roosen against John P. Carlson and Philip Ruxton. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Duncan Edwards, for appellants.
James C. Church, for respondent.

WILLARD BARTLETT, J. The judgment in this action permanently enjoins the defendant John P. Carlson from disclosing to any person any of the formulas now possessed by him for the manufacture of inks or dyes, and also from working in the manufacture of inks and dyes, either on his own account or for the defendant Philip Ruxton, or any other person. It also commands the defendant Carlson to place all of the written formulas known to him in a safe-deposit box of the Brooklyn Trust Company, and awards to the plaintiff costs against both the defendants. The doctrine upon which this injunction rests is that, where a person has contracted to render special, unique, and extraordinary services to another, but refuses to carry out his agreement, equity will restrain him from rendering such services to anybody else. The contract which the defendant Carlson has refused to perform was made with the plaintiff in the autumn of 1898, when both parties were in the employ of the defendant Ruxton, who was an ink manufacturer,—the plaintiff as a salesman and the defendant Carlson as a mixer of inks. The instrument begins by reciting the intention of the parties to form an ink manufacturing corporation, to which the plaintiff is to contribute 80 per cent. of the capital and the defendant Carlson 20 per cent., in addition to which the defendant Carlson is to render services to such corporation in the manufacture of inks and colors in accordance with certain secret formulas known only to him. The plaintiff agrees to organize the corporation, promises to assign the contract to it, and covenants that the corporation will perform his engagements thereunder. The plaintiff further agrees to employ the defendant Carlson for three years from December 3, 1898, as superintendent of the ink manufacturing business, at a compensation of $40 a week, and that upon the formation of the proposed corporation he will sign a contract to act as its president and salesman for three years at the same compensation. On the other hand, the defendant Carlson undertakes to assume charge of the business as practical superintendent and manager, devoting to it all his time and attention, and using therein, whenever needed, such secret formulas as may be necessary and proper to make the required inks. Further provisions relate to the deposit of the

formulas for safe-keeping, and the disposition thereof at the termination of the agreement.

The present suit was originally instituted against the defendant Carlson alone by reason of his refusal to fulfill this contract on his part. In justification of such refusal he denied that he had acquired any secret formulas or possessed any high degree of skill in the manufacture of inks, and averred that the plaintiff had procured the execution of the instrument by misrepresentation and fraud. Philip Ruxton, the former employer of both, was subsequently brought in as a defendant. See Lithographing Co. v. Crane (Sup.) 12 N. Y. Supp. 834. He interposed an answer averring, in substance, that the plaintiff, while employed as his salesman, plotted to entice the defendant Carlson from his service as an ink mixer and foreman, so as to start a rival ink manufacturing business, and obtain therein the use of the secret formulas known to the defendant Carlson, none of which were the property of the latter, but all of which belonged to the defendant Ruxton. The learned trial judge has decided in favor of the plaintiff, without, however, expressly passing upon the claim of the defendant Ruxton to the ownership of the secret formulas used by the defendant Carlson. The direction in the decision is that judgment be entered against the latter as prayed for in the complaint. If this direction had been followed, the decree would award to the plaintiff the sum of $10,000 damages against the defendant Carlson, in addition to the equitable relief granted; but the terms of the decision in this respect are evidently broader than the learned judge intended. The rule of equity which the plaintiff has invoked successfully in the case at bar is thus stated by a distinguished author:

"Where one person agrees to render personal services to another, which require and presuppose a special knowledge, skill, and ability in the employé, so that, in case of default, the same services could not easily be obtained from others, although the affirmative specific performance of the contract is beyond the power of the court, its performance will be negatively enforced by enjoining its breach." Pom. Spec. Perf. (2d Ed.) § 24.

Thus an opera singer, who has agreed to sing only for a particular manager, cannot be compelled to sing for him, but she can be prevented from singing for anyone else during the term covered by her contract. In such cases, the injunction is a substitute for the decree of specific performance, and it should not be granted where a decree for specific performance would be refused. In determining whether a contract shall be specifically enforced, or whether the injured party shall be relegated to his action at law, it is proper to consider the rights of third persons who are not parties to the agreement, and to withhold the equitable remedy if it will operate upon such persons unjustly. So, in passing upon the question here, whether the plaintiff should have the injunctive relief which he sought against the defendant Carlson, the effect of the desired injunction upon the rights of the defendant Ruxton was a material matter for consideration. If the defendant Ruxton really owned the secret formulas, and no one else had any right to them, as he alleged in his answer, he ought not to be compelled to disclose these formulas to some new workman other than Carlson. The injunction against Carlson, however, would

oblige Ruxton to do this, if he desired to continue the business without actually mixing inks himself. Hence the propriety of awarding the plaintiff equitable rather than legal relief depended largely upon the relation of the defendant Ruxton to the secret formulas. The learned court, however, would not allow Ruxton to give evidence tending to prove the ownership which he had set up in his answer. I think that the exception to the ruling on this subject should lead to a reversal of the judgment. In a suit of this kind the fullest light should be thrown upon the equities of the various parties, and it is not difficult to perceive that a more complete inquiry in the present case might have resulted in remitting the plaintiff to his remedy at law.

Thus far in the discussion I have proceeded upon the assumption that the contract in question contemplated the rendition of personal services by the defendant Carlson to the plaintiff, but I doubt very much whether that assumption is correct. I am rather inclined to regard the instrument as a joint agreement to participate in the formation of a corporation into whose employment both parties were to enter and remain at a stipulated compensation for a period of three years. The plaintiff was not to be the employer of the defendant Carlson any more than the defendant Carlson was to be the employer of the plaintiff, after the corporation was organized. The corporation was to be the employer of both. The evidence strongly indicates that the contract was designed to carry out a plan on the part of the plaintiff, in which he induced the defendant Carlson to participate, to supplant the defendant Ruxton in the ink business; and that, after Carlson came to appreciate the true nature of the scheme, he abandoned it, and concluded to remain with Ruxton. But, however this may be, on the record as it stands, and in view of the exclusion of evidence in support of Ruxton's claim of ownership, the equities of the plaintiff are not sufficiently clear to entitle him to the judgment which has been rendered in his favor.

Judgment reversed and new trial granted; costs to abide the final award of costs. All concur.

## Motion for Reargument.

### (January 16, 1900.)

PER CURIAM. In support of this motion it is argued that the sole ground for reversal was an alleged error of the trial judge in refusing to allow the defendant Ruxton to give evidence tending to prove his ownership of the secret formulas in controversy. It is said that the alleged error was not suggested by the appellants, either on their brief or oral argument, and consequently the respondent did not touch upon the question. An examination, however, of the respondent's second brief filed upon the argument of the appeal shows that his counsel therein called attention to this very ruling, insisting that, after it was made, the defendants neglected to show whether or not the defendant Ruxton was the owner of the formulas. The exception was squarely brought to the attention of the court by the respondent's counsel himself, and he cannot now justly complain that it was considered in the disposition of the appeal.

It is also argued that the objection was not to the evidence, but to the form of the question, as calling for a conclusion. In view of the other evidence which had been given in the case, we do not think it ought to have been sustained on this ground. Many questions are permissible the answers to which involve conclusions to some extent; and we think this inquiry into Ruxton's ownership should have been allowed, to be followed, if necessary, by further questions as to the facts upon which his claim was based. Counsel for the respondent now insists that Ruxton testified at length as to his ownership of the formulas at folios 145 to 148 and 156 of the appeal book. In his second brief on the original argument, however, he asserted that all Ruxton's testimony in which there was any attempt to claim that he was entitled to the formulas was at folios 61, 158, and 315. Then, too, the testimony to which reference is now made related to possession, rather than ownership. Furthermore, wholly irrespective of the exclusion of evidence in support of Ruxton's claim of ownership, the court was disinclined to regard the contract between the parties as an agreement to render personal services to another, involving the exercise of special skill, so as to bring the case within the equitable rule permitting an injunction against the exercise of such skill for the benefit of others. Even if the exclusion of the evidence concerning Ruxton's ownership was not sufficient of itself to justify a reversal of the judgment, we are quite clear that the contract is one which should not be enforced negatively by enjoining its breach. The question whether the facts were such as to entitle the plaintiff to equitable relief was fully discussed in the briefs and on the oral argument, and there is no occasion for a reargument on that subject. If the facts are presented on a new trial as they were presented on the trial already had, the utmost relief to which the plaintiff would be entitled would be the recovery of such money damages as he could prove he had sustained by reason of the refusal of the defendant Carlson to unite in the formation of the contemplated corporation.

Motion for reargument denied.